UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH L. HARBISON,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>  Defendant. | CASE NO. 3:16-cv-05337 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 14, 15, 16).

After considering and reviewing the record, the Court concludes that the ALJ did not commit harmful legal error when evaluating the medical opinion of examining doctor, Dr. Alvord. The ALJ found that Dr. Alvord's opinion was provided during a time

when plaintiff was out of medication and not complying with recommended counseling and that plaintiff felt better after he re-engaged in services. These findings are based on substantial evidence in the record as a whole and are specific and legitimate reasons for failing to credit fully this opinion.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, KENNETH L. HARBISON, was born in 1969 and was 34 years old on the alleged date of disability onset of August 15, 2004 (*see* AR. 153-59, 160-63). Plaintiff completed high school with a GED (AR. 950, 982). Plaintiff has work history as a parts delivery driver, manufacturing supervisor and maintenance technician/production operator (AR. 238-49). Plaintiff has not worked since 2007, when he had some self-employment wages and work for Partners in Careers, explaining that "I had a lot of medical appointments and stuff and I just, I don't know what I could do" (AR. 951). Regarding his work for the Department of Corrections, he indicated to an examining doctor that he sustained a back injury "and I had to stop doing that" (AR. 1416).

According to the ALJ, plaintiff has at least the severe impairments of "major depressive disorder, antisocial personality disorder, bipolar disorder, posttraumatic stress disorder (PTSD), degenerative disc disease, diverticulitis status post colectomy, polysythemia, chronic obstructive pulmonary disease (COPD), hernia status post surgical repair and tennis elbow (20 CFR 404.1520(c) and 416.920(c))" (AR. 924).

At the time of the hearing, plaintiff was living by himself in a subsidized apartment (AR. 950, 982, 983).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 75-81, 82-90, 93-97, 98-104).

Plaintiff's first hearing resulted in an unfavorable decision from the administrative law judge and a remand from the district court (*see* AR. 8-28, 1021-37).

Plaintiff's second requested hearing was held before Administrative Law Judge S. Andrew Grace ("the ALJ") on June 17, 2015 (*see* AR. 946-77). On August 13, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 919-45).

In plaintiff's Opening Brief, plaintiff raises the following issue: (1) Whether or not the ALJ erred in rejecting the opinion of Dr. Alvord (*see* Dkt. 14, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1)   Whether or not the ALJ erred in rejecting the opinion of Dr. Scott Alvord, Ph.D., examining doctor.**

Plaintiff contends that the ALJ erred when evaluating the medical opinion of examining doctor, Dr. Alvord. Defendant contends that there is no error.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Dr. Alvord examined plaintiff in February, 2014 (*see* AR. 1415-20). He reviewed multiple medical records (*see* AR. 1415). For example, he disagreed with some aspects of plaintiff's previous medical record, noting that "records reviewed by this author describe mood disorder potentially related to medical issues although I see fairly clear evidence of bipolar affective disorder type II" (AR. 1416). Dr. Alvord also indicated that he saw "evidence of an underlying anxiety disorder" (*id*.).

Dr. Alvord performed a mental status examination ("MSE"), for example observing that plaintiff was "slightly irritable/guarded," which he opined was

"symptomatic as opposed to volitional" (AR. 1417). Dr. Alvord observed that plaintiff's affect was "downtrodden/irritable/tearful" (*id.*). Plaintiff's psychomotor "movements were significant for slow ambulation" (*id.*).

Dr. Alvord diagnosed plaintiff with bipolar affective disorder type II as well as co-morbid PTSD (AR. 1418). Dr. Alvord opined that plaintiff's "functioning appears to have declined since he was previously evaluated in 2010" (*id.*). Dr. Alvord noted that plaintiff "continues to present as quite psychiatrically ill" (*id.*). He also noted that plaintiff's prescribed medications at the time of his evaluation included "Klonopin, Lorazepam, Lamictal, Meloxicam, Tramadol and Quvar," indicating that he found it noteworthy that plaintiff was "currently prescribed a mood stabilizer in addition to anxiolytics" (AR. 1416). Dr. Alvord opined "that a combination of medical and psychiatric distress will make it very difficult for [plaintiff] to function at this point occupationally" (AR. 1418).

The ALJ discussed and then failed to credit fully Dr. Alvord's opinion (AR. 932, 934). In doing so, the ALJ noted some of Dr. Alvord's MSE findings, such as that plaintiff's "thought processes were intact . . . . He was oriented, memory was intact, and his speech was within normal limits" (AR. 932 (citing AR. 1417)). The ALJ provided a number of reasons for failing to credit fully Dr. Alvord's opinion (AR. 934).

For example, the ALJ noted that "treatment records indicate [that plaintiff] was out of treatment and medication around this time, and other notes suggest that [plaintiff] felt better after he re-engaged in services" (*id.* (citing AR. 1466, 1469)). These findings noted by the ALJ are supported by substantial evidence in the record as a whole. As the ALJ noted previously in his written decision, in "March 2014, treatment notes indicate

1  [that] the claimant had been discharged from See Mar and was not taking his prescription
2  medications" (AR. 932 (citing 1469) ("He has been discharged from See Mar [and] is not
3  taking Lorazepam because his prescriptions ran out")). Although this treatment record
4  cited by the ALJ is from one month after the examination from Dr. Alvord, other
5  treatment records from prior to this examination that were discussed previously in the
6  ALJ's written decision also demonstrate this trend (*see* AR. 931-32).
7       As noted by the ALJ, in September, 2012, plaintiff's "provider indicated she was
8  unable to reach the claimant since July 2012 and intended to close his case secondary to
9  inactivity," while two months later, "treatment notes from SeaMar in November 2012
10 [indicate that plaintiff] reported a decrease of anxiety and depressive symptoms when he
11 was taking his medications" (AR. 931 (citing AR. 1164 ("reported decrease of anxious
12 and depressive symptoms"); *see also* AR. 1160 (11/12/12 note of plaintiff's comment
13 that "medicine has helped"), AR. 1207) (internal citation omitted). Despite reporting in
14 November, 2012, that his "medicine has helped," as noted by the ALJ, in "January 2013,
15 however, the claimant was reported to have been off his psychiatric medications for a
16 couple of months due to lack of engagement in services and not obtaining refills" (AR.
17 931, 1160 (citing AR. 1494 ("client is not taking any medication at all at this time")))·
18 Similarly, as noted by the ALJ, subsequent treatment notes from June 2013 reflect that
19 plaintiff "reported a decrease in anxiety and improved sleep due to an increase in his
20 medications," however, treatment "notes from the claimant's therapist in September 2013
21 indicate the claimant was again reported to [be] stubborn and not engaged in therapy for
22 two months" (AR. 932 (citing AR. 1193, 1523 (9/3/2013 note that the therapist has not

"seen him since 7/11/13," and the September 30, 2013 note states that plaintiff "is stubborn and not engaged" and that he is obtaining "no effective results due to his resistance")) (internal citations omitted). Similarly, as noted by the ALJ, treatment notes "from November 2013 indicate the claimant was not taking his Lorazepam daily, and his case was closed because of non-engagement with his therapist (his third at SeaMar)" (*id*. (citing AR. 1470 ("he does not take Lorazepam daily"))).

This last treatment note from November 19, 2013 regarding not taking his Lorazepam daily and not engaging with his therapist occurred approximately two and a half months prior to plaintiff's examination with Dr. Alvord on February 3, 2014; and, on March 20, 2014 plaintiff's treatment record indicates that plaintiff still was "not taking Lorazepam because his prescriptions ran out," and that plaintiff would "try to restart with therapy at SeaMar" (AR. 1469). Although the record reflects that plaintiff was taking one of his medications in March, 2014, it also reflects that he still was not taking his Lorazepam and still had not re-engaged in therapy. Therefore, the ALJ's finding that plaintiff was out of treatment and medication around the time of Dr. Alvord's examination is based on substantial evidence in the record as a whole. "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

In addition, previously in his written decision, the ALJ had indicated that after the November 2013 treatment notes reflecting that plaintiff was not taking his Lorazepam

daily and not engaging with his therapist, and after the March 2014 treatment notes reflecting that plaintiff had been discharged from SeaMar and was not taking his prescription medications, "three months later, [plaintiff] reported feeling better as he was reengaged in medication therapy" (AR. 932). As noted by the ALJ, on June 10, 2014, approximately four months after the examination with Dr. Alvord, plaintiff "reported feeling better," and the next month, on July 11, 2014, plaintiff's provider noted her opinion that plaintiff's mood was "more stable" (AR. 932 (citing AR. 1462-63 ("Impression: mood is more stable."), 1466 ("I have a new girlfriend and I am feeling better . . . . Last medication dose [for bipolar disorder] was taken today"))) (internal citations omitted). Therefore, for the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that other notes from plaintiff's treatment record "suggest [that plaintiff] felt better after he re-engaged in services," is a finding based on substantial evidence in the record as a whole (AR. 934; *see also* AR. 1160 (11/12/12 note of plaintiff's comment that "medicine has helped"), AR. 1466 (6/10/14 note that plaintiff's "symptoms are relieved by bipolar medications and psychotherapy")).

Even if this was the only reason offered by the ALJ for the failure to credit fully the medical opinion of Dr. Alvord, it would be a specific and legitimate reason. For the reasons stated and based on the record as a whole, Court concludes that the ALJ provided specific and legitimate rationale based on substantial evidence in the record as a whole for failing to credit fully the opinions from Dr. Alvord regarding plaintiff's functional limitations. The Court also notes that the ALJ additionally relied on the rationale that "Dr. Alvord himself noted his assessment of the claimant's moderate to severe problems

ORDER ON PLAINTIFF'S COMPLAINT - 8

with concentration, persistence or pace was based at least in part on the claimant's physical issues, an area outside of Dr. Alvord's expertise" (AR. 934 (citing AR. 1417)) (internal citation omitted). This rationale provides additional support for the ALJ's decision, as Dr. Alvord is a psychologist, not a medical doctor, and indicated his opinion that plaintiff's "ability to concentrate, persist and pace is considered moderately to severely impaired given a combination of significant medical issues as well as psychiatric issues" (AR. 1417).

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant the case should be closed.

Dated this 16th day of November, 2016.

J. Richard Creatura
United States Magistrate Judge